(No. 16688.—Reversed and remanded.)

THE MARION AND EASTERN RAILROAD COMPANY, Appellant, *vs.* THE MISSOURI PACIFIC RAILROAD COMPANY *et al.* Appellees.

*Opinion filed October 28, 1925—Rehearing denied December 3, 1925.*

1. RAILROADS—*whether additional track is an extension of railroad or a spur-track depends on the facts.* Whether a proposed additional track will constitute an extension of a railroad company's line or will be only a spur-track, which may be constructed without the certificate of convenience and necessity required by the Interstate Commerce act, depends upon the facts in each case, as there is no clear line of demarkation between a spur-track and an extension or a new line of railroad.

2. SAME—*what is a spur-track.* Ordinarily a spur or industrial track is one which is used for the loading, re-loading, storing and switching of cars and for other services merely incidental to the regular train haul.

3. SAME—*when a railroad company must obtain permission for track extension.* The purpose of the Interstate Commerce act in requiring a certificate of convenience and necessity before a railroad company will be allowed to extend its track is to prevent the building of duplicate lines of railroad, and where a proposed extension of track will be more than a mile in length and cover territory already served by another railroad and if laid will be used in interstate as well as intrastate commerce, it cannot be termed a

spur-track but is rather an extension of the railroad line, and permission for its construction must be obtained as provided in the Interstate Commerce act.

4. SAME—*when Interstate Commerce act controls.* The Interstate Commerce Commission has been given authority over interstate commerce and the exercise of like power by the State is thereby superseded, and where interstate and intrastate transactions are so related that the government of the one involves the control of the other the Interstate Commerce act applies.

APPEAL from the Circuit Court of Williamson county; the Hon. R. R. FOWLER, Judge, presiding.

ALFRED G. HAGERTY, for appellant.

WHITE & COLP, and WHITNEL & BROWNING, (EDWARD J. WHITE, of counsel,) for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Marion and Eastern Railroad Company on February 14, 1925, filed its bill for an injunction in the circuit court of Williamson county against the Missouri Pacific Railroad Company, James E. Finucane and the West Virginia Coal Company. The complainant alleges in its bill that it is an Illinois corporation owning and operating a railroad approximately eleven and one-half miles in length, extending from Paulton to Marion, in Williamson county; that its railroad is connected in the vicinity of Marion with the Illinois Central railroad, the Chicago and Eastern Illinois railroad and the Missouri Pacific railroad; that these railroads extend into and through many of the United States, and that complainant's railroad with these three railroads, including others connecting therewith, form through routes, are engaged in the interstate transportation of persons and property, maintain joint rates, and are jointly and severally amenable to the provisions of the Interstate Commerce act. The bill then sets forth that Finucane has es-

tablished a construction camp near Scranton station, adjacent to complainant's railroad; that the Missouri Pacific Railroad Company, by Finucane, is about to begin the construction of an extension of its railroad in a southeasterly direction to and across complainant's railroad in the vicinity of Scranton station and thence onward to a point near the town of Crab Orchard; that no notice of the object and purpose of the Missouri Pacific Railroad Company to make the proposed extension has been given to the public, either by publication for three consecutive weeks in a newspaper of general circulation in Williamson county, or by notice to the Governor of the State, as required by the Interstate Commerce act; that the requisite certificate of public convenience and necessity has not been issued, and that in consequence the construction of the extension will be unlawful *per se.* The bill further charges that adequate through routes to all points are efficiently maintained and operated through Marion from the coal fields which the Missouri Pacific Railroad Company is attempting to reach; that the purpose of that railroad company in extending its line is to close the transportation gateway through Marion, and either to absorb complainant's railroad or wholly to destroy it as a transportation facility; that if the extension should be built complainant will immediately suffer irreparable damage, because it will no longer receive coal for transportation over the established through routes; that public convenience and necessity do not require the contemplated extension; and that as a party in interest, within the meaning of the Interstate Commerce act, complainant has the right to enjoin the construction of the proposed extension. The prayer of the bill is that the defendants be restrained from constructing the extension until they obtain authority, in the form of a certificate of public convenience and necessity, therefor. To the bill is appended an affidavit by the president of the complainant that the matters set forth in the bill are true to the best of his knowledge and belief.

A temporary injunction was granted upon the filing of the bill. On February 20, 1925, the Missouri Pacific Railroad Company moved to dismiss the bill and to vacate the order. The motion was denied. The defendant railroad company then answered the bill. It avers in its answer that the proposed extension will constitute a spur or industrial track 5890 feet in length, to run from an existing spur on its line serving the West Virginia Coal Company's mine to a new shaft of the same company which is under construction; that no spur, industrial or other railroad track now serves the new mine shaft; that the only traffic which will move over the proposed track will be coal and supplies to and from the new shaft of the coal company, and that no other shipper will be served thereby; that no regular, continuous train movements will be made over or passenger trains operated on the track; that no line-haul rates will be established or charged for traffic thereon; that no station, either for the accommodation of freight or passengers, will be built on the proposed extension; that the use of the new track will require no billing of freight to and from the mine other than that made at Bush station; that this station is the terminal point on the Missouri Pacific railroad at which the West Virginia Coal Company's shipments will originate and be billed for road-haul movements by through continuous transportation service, and that the spur will be used solely for loading, unloading, switching and other purposes connected with and incident to such service. The answer denies that by the Interstate Commerce act or any other law the Missouri Pacific Railroad Company is required to give notice of the construction of the proposed track, or that the track, if constructed, will cause irreparable damage to the complainant. It denies that the new shaft of the coal company is served by complainant or any other railroad, and it denies that for the purpose of constructing and operating the track a certificate of public convenience and necessity or other express authority is re-

quired. The answer is verified by the superintendent of the railroad company. A replication to the answer was filed. The other defendants, James E. Finucane and the West Virginia Coal Company, by their answers adopted the answer of the Missouri Pacific Railroad Company.

After the filing of the answers, on February 20, 1925, the motion to dismiss the bill was renewed and was again denied. A hearing followed, at which only the complainant offered evidence. Its president testified that the Marion and Eastern railroad extends from Marion in a northeasterly direction through the east half of Williamson county. It was built for the purpose of developing that part of the county and giving it railroad service. Connections are made with trunk lines at Marion. Complainant in 1922 laid a switch-track near the point where the shaft of the West Virginia Coal Company was to be sunk. The ties, rails and other material for the mine-track were delivered on the ground. The West Virginia Coal Company then directed complainant not to proceed with the construction of the mine-track because the coal company would not at that time sink the shaft, and nothing further was done. The proposed track of the Missouri Pacific railroad will reach complainant's railroad near mile-post No. 2, in the vicinity of Scranton station. There are no coal mines at that point. A shaft is about to be sunk approximately 700 feet west of complainant's track, or about 200 feet from the switch-track which it constructed in 1922. Mines are under development east of the track, and complainant has purchased right of way into that territory to Crab Orchard. The witness had been over the route of the track proposed to be laid by the Missouri Pacific Railroad Company, and he had followed the stakes to the east of complainant's line. Complainant had laid its tracks from Scranton station west to where the proposed mine was to be opened. Through routes and joint rates from Scranton station through Marion to coal-consuming markets are maintained by complainant in connec-

tion with the Missouri Pacific Railroad Company, the Illinois Central Railroad Company and the Chicago and Eastern Illinois Railway Company. The witness was asked what effect the proposed extension would have upon complainant's railroad in a competitive sense. An objection to the question was sustained, the court stating that it did not seem to be material. An exception was preserved to the ruling.

Samuel F. James, an employee of complainant, testified that he saw stakes running west from its track in the vicinity of Scranton station, and also one east of the track, but it had since been removed. He also testified that he saw Finucane's construction camp at the same place.

At the conclusion of the testimony on behalf of complainant the defendants moved to dismiss the bill, to vacate the restraining order and to dissolve the injunction. The motion was granted and a decree entered accordingly. Complainant prosecutes this appeal from that decree. Subsequently, in vacation, on motion of counsel for appellant, a judge of this court ordered the temporary injunction to continue in force during the pendency of this appeal.

Certain preliminary questions are raised by cross-errors assigned by the appellees. They are, (1) that the bill of complaint is not properly verified because its allegations are made upon knowledge and belief, and the facts which are stated upon affiant's knowledge are not distinguished from those which rest merely upon his belief; (2) that the bill, lacking a proper verification, failed to show cause for the issuance of a temporary injunction without notice and without bond; (3) that the preliminary motion of the appellees to dismiss the bill and to dissolve the injunction should have been allowed; and (4) that, in any event, the temporary injunction should have been dissolved upon the filing of the sworn answer. All the cross-errors so assigned raise questions antecedent to the final action of the chancellor. Even assuming that the bill was defective for the want of

a proper verification, yet the appellees filed their answers thereto. The hearing followed, at which appellant offered testimony to support the allegations of its bill. Upon the conclusion of that hearing the temporary injunction was dissolved and the bill was dismissed. The only question now to be determined is whether, upon the whole record, the appellant is entitled to the injunction which it seeks.

Paragraphs 18 and 22 of section 1 of the Interstate Commerce act (3 Supp. U. S. Comp. Stat. 1916,—1923 ed.— pp. 2450, 2452,) provide:

"18. No carrier by railroad subject to this act shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this act over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or·future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this act shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment."

"22. The authority of the commission conferred by paragraphs 18 to 21, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or side-tracks located or to be located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation."

No certificate that the present or future public convenience and necessity require the construction of the proposed track has been obtained from the Interstate Commerce Com-

mission by the Missouri Pacific Railroad Company. If the track which that railroad company proposes to build will be a spur-track it has the right to proceed with its construction without a certificate from the Interstate Commerce Commission. If, however, the track will be an extension or a new line of railroad the appellant is entitled to the injunction sought. There is no clear line of demarkation between a spur-track and an extension or a new line of railroad. Each case must be governed by its facts. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Commerce Com.* 315 Ill. 461; *Detroit and Mackinaw Railway Co.* v. *Boyne City, G. & A. Railroad Co.* 286 Fed. 540; *Application of A. & S. A. B. Railway Co.* 71 I. C. C. 784.) Ordinarily, spur or industrial tracks are those which are used for the loading, re-loading, storing and switching of cars and other services merely incidental to the regular train haul. (*Detroit and Mackinaw Railway Co.* v. *Boyne City, G. & A. Railroad Co. supra; Akers* v. *United New Jersey Railroad Co.* 43 N. J. L. 110.) The proposed track, according to the answer of the Missouri Pacific Railroad Company, will be more than a mile in length, and will run from its line to a coal shaft under construction by the West Virginia Coal Company. Appellant has already constructed a switch-track to this new shaft with the exception of the mine-track, for which the material was on the ground. The new track, if built, will enter territory served by appellant, to and from which through routes and rates exist. While the answer avers that on the proposed track no line-haul rates will be established, nor regular continuous movements of trains made, nor a station erected, nor the billing of freight required, except through existing facilities, the effect of the construction of that track will be to afford railroad service in direct competition with appellant's road, on which, in connection with other railroads, through routes and rates have been established. The track, if laid, will be used in interstate as well as intrastate commerce. It will be an ex-

tension of the line of the Missouri Pacific railroad, rather than a spur, industrial, team, switching or side-track, as defined in paragraph 22 of section 1 of the Interstate Commerce act.

One of the reasons for the enactment of paragraph 18, above quoted, is to prevent the building of duplicate lines of railroad where an additional line will not serve the present or future public convenience and necessity but will add to the burden of maintenance, which the public will be required to pay. (*Detroit and Mackinaw Railway Co.* v. *Boyne City, G. & A. Railroad Co. supra.*) Congress has expressly prohibited railroad companies subject to the Interstate Commerce act from extending their lines without the consent of the Interstate Commerce Commission. That body has been given authority to exercise the power over interstate commerce, and the exercise of a like power by the State is thereby superseded. (*Atchison, Topeka and Santa Fe Railway Co.* v. *Railroad Com.* 211 Pac. 460.) Upon this record interstate and intrastate transactions appear to be so related that the government of the one involves the control of the other. In such a situation the Interstate Commerce act applies. *Atchison, Topeka and Santa Fe Railway Co.* v. *Railroad Com. supra; Railroad Com.* v. *Southern Pacific Railroad Co.* 264 U. S. 331.

The decree of the circuit court will be reversed and the cause remanded, with directions to continue the injunction in force until the appellee the Missouri Pacific Railroad Company, if it so desires, shall obtain from the Interstate Commerce Commission a certificate of public convenience and necessity authorizing the construction of the proposed extension.        *Reversed and remanded, with directions.*