THE PEOPLE OF THE STATE OF ILLINOIS et al. Appellants,
vs. THE ILLINOIS CENTRAL RAILROAD COMPANY et al.
Appellees.

*Opinion filed February 16, 1927—Rehearing denied April 7, 1927.*

1. RAILROADS—*extent of the power of Congress over interstate commerce.* By comprehensive terms in the Federal constitution the authority of Congress over interstate commerce is made adequate to meet varying exigencies that arise and to protect the national interest by securing the freedom of interstate commercial intercourse from local control; and this power may be exercised, among other things, in matters of rates, issuance of securities, the control of one railroad by another and the construction of extensions and of new lines, and may include the granting of franchises additional to those enjoyed under the charter granted by the State in which the railroad corporation was created.

2. SAME—*a bill to enjoin action of railroad companies under orders of Interstate Commerce Commission should be dismissed for want of jurisdiction.* A bill to enjoin a railroad company from building a new line of railroad and another defendant company from acquiring and operating the new railroad on the ground that the action is contrary to the laws of the State and violates the charter of the latter company should be dismissed for want of jurisdiction, where the answers of the defendants disclose that they are acting under permission of the Interstate Commerce Commission and that the suit is essentially one to annul or set aside orders of said commission, as the power to determine whether compliance with State laws will obstruct interstate commerce inheres in the Federal government as an incident of its power to regulate such commerce.

DUNCAN, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

OSCAR E. CARLSTROM, Attorney General, A. D. RODENBERG, HARRY EUGENE KELLY, DAVID S. LANSDEN, and WILLIAM S. DEWEY, for appellants.

WALTER S. HORTON, EDWARD C. CRAIG, VERNON W. FOSTER, and ROBERT V. FLETCHER, for appellees.

Mr. JUSTICE DeYOUNG delivered the opinion of the court:

The People of the State of Illinois, the Attorney General of the State, and sixteen persons, stockholders of the Illinois Central Railroad Company and tax-payers, filed their bill of complaint in the superior court of Cook county to enjoin the Southern Illinois and Kentucky Railroad Company (a) from constructing a railroad between Edgewood and Metropolis; (b) from permitting the Illinois Central Railroad Company to acquire, operate or control such railroad; and (c) from issuing any capital stock to the Illinois Central Railroad Company or any of its officers, directors, agents or employees; and to enjoin the Illinois Central Railroad Company (a) from purchasing or holding any of the capital stock of the Southern Illinois and Kentucky Railroad Company; (b) from purchasing, leasing, operating or controlling the proposed railroad of that company; and (c) from advancing or lending any money or credit or giving any assistance to the same company for the purpose of constructing or operating the proposed railroad. The complainants made application for a temporary injunction, and the motion was heard upon the bill of complaint, the answers of the two railroad companies, and certain affidavits submitted by the parties in support of their respective contentions. Such an injunction, substantially in accordance with the prayer of the bill, was granted. The construction of the proposed railroad by the Southern Illinois and Kentucky Railroad Company was not, however, enjoined. From this interlocutory order the defendants prosecuted an appeal to the Appellate Court for the First District. That court reversed the order and remanded the cause to the superior court, with directions to dissolve the injunction and to dismiss the bill for want of jurisdiction. Upon the remandment the parties stipulated that the bill, answers, affidavits and exhibits should be taken as the evi-

dence upon the final hearing of the cause, and in accordance with that stipulation the superior court by its decree dissolved the temporary injunction and dismissed the bill "for want of jurisdiction and for want of equity." The complainants prosecute this appeal from that decree.

The substance of the allegations of the bill of complaint will first be stated:

The Illinois Central Railroad Company is a corporation organized by virtue of an act of the General Assembly of Illinois approved February 10, 1851, entitled, "An act to incorporate the Illinois Central Railroad Company," and this act constitutes the railroad company's sole charter. By authority of that charter the company built a main trunk or central line of railway from the city of Cairo, near the junction of the Ohio and Mississippi rivers, to the southern terminus of the Illinois and Michigan canal, with branches to the cities of Chicago and Galena. This main line and these branches were the only railroads the company was authorized or required by its charter to build. They are known as the charter lines and have been operated since 1855. The company received and appropriated to its use, under the terms of its charter, 2,595,000 acres of the public domain in Illinois, from the sale of which it realized more than $25,000,000, and in addition over $6,000,000 as interest on deferred payments. During the period from 1855 until December 31, 1922, the company paid into the State treasury, as required by its charter, seven per cent of its gross receipts. These payments aggregated $54,380,-586.35 and were made in lieu of all other taxes on the charter lines. The president of the company asserted publicly that if these lines had been subjected to general taxes and not the charter tax the company would have paid for the same period approximately $23,500,000. On its non-charter lines the company pays such taxes as are levied generally on railroad property in the State. Various communities, with an aggregate population of 100,000, have grown

324—38

up along the trunk line of the railroad, and the value of the property in these communities exceeds $100,000,000. Cairo alone has property worth more than $40,000,000, and annually its car-load shipments total 68,760, its manufactured products have a value of $10,526,159, it handles 150,000,000 feet of lumber and ships 32,000,000 bushels of oats. The city has seven grain elevators, with a total capacity of 2,375,000 bushels. Other communities along the trunk line include Odin, Central City, Centralia, Tamaroa, DuQuoin, Carbondale, Anna, Mounds and Mound City. The transportation business of these communities is conducted principally over the main charter line of the company.

The Illinois Central Railroad Company devised a plan and scheme to change its main trunk or central line of railroad from the place designated in its charter to another location, and since it lacked the power to build a new railroad in its own name and right it caused certain of its officers on April 12, 1923, to incorporate the Southern Illinois and Kentucky Railroad Company under the general Railroad law of the State. The charter granted to that company gives it the right to construct a railroad extending from Edgewood, in Effingham county, to a connection with the Paducah and Illinois railroad at Metropolis, in Massac county, and from a point on the proposed railroad at Akin, in Franklin county, southwesterly to a connection with the Benton Southern railroad, near its northern terminus. The Illinois Central Railroad Company owns and controls the Southern Illinois and Kentucky Railroad Company to enable it to build and operate the new railroad as a part of its system and to change the location of its main line south of Edgewood, Illinois. The line from Edgewood to Metropolis is under construction, and the Illinois Central Railroad Company will advance to the Southern Illinois and Kentucky Railroad Company the whole sum necessary to build it. When completed the line will be parallel to and

not more than thirty miles distant from, and will be in competition with, the main trunk or central line of the Illinois Central Railroad Company. Neither railroad company has applied to the Illinois Commerce Commission for a certificate of convenience and necessity or other license or authority to construct the proposed railroad and neither company has corporate power to do what it contemplates.

In conjunction with its trunk line the Illinois Central Railroad Company operates a railroad from Cairo, Illinois, to New Orleans, Louisiana. The line south of Cairo is owned by the Chicago, St. Louis and New Orleans Railroad Company, a Kentucky corporation. The Illinois Central Railroad Company owns all of the capital stock of that company and completely controls it and operates its railroad under leases for long periods, varying from one hundred to four hundred years. By means of the Kentucky corporation the Illinois Central Railroad Company is engaged in the construction of a railroad from Fulton, Kentucky, to the Ohio river at a point opposite Metropolis, Illinois, and will advance the funds necessary for that purpose.

The Paducah and Illinois Railroad Company owns a bridge over the Ohio river, at Metropolis. The Chicago, St. Louis and New Orleans Railroad Company has entered into a contract with the Chicago, Burlington and Quincy Railroad Company, the Nashville, Chattanooga and St. Louis Railroad Company and the Paducah and Illinois Railroad Company whereby the first named company and the Illinois Central Railroad Company, its lessee, have secured the right to use the bridge and other facilities of the Paducah and Illinois Railroad Company for the purpose of connecting the two proposed railroads, and, as a part of its plan, the Illinois Central Railroad Company has become liable for approximately $2,000,000 first mortgage bonds issued by the Paducah and Illinois Railroad Company.

The proposed railroad extending from Edgewood, Illinois, to Fulton, Kentucky, will be approximately 169 miles

in length, and if built will deprive the people of Illinois of the benefits of the charters of the Illinois Central and Southern Illinois and Kentucky Railroad companies. The individual complainants, as stockholders of the Illinois Central Railroad Company, sought to dissuade the directors and officers of that company from proceeding with the project on the ground that it was contrary to the laws of the State, the charter provisions of the railroad company, the interests of its stockholders and the interests of the communities along the main trunk line of the railroad between Edgewood and the Ohio river, but all efforts in that behalf were without avail.

The averments of the answer of the Illinois Central Railroad Company follow:

The act of Congress approved September 20, 1850, granted considerable land to the States of Illinois, Mississippi and Alabama for the purpose of aiding in the construction of a railroad from Chicago to Mobile, Alabama. The land received by the Illinois Central Railroad Company was the land so granted to the State of Illinois. The company not only owns and operates the lines described in its charter, but it also owns or controls and operates additional mileage in Illinois and other States. The communities located on its trunk line are also served by other railroads, and many of these communities are located on lines of the company other than its charter lines.

The Southern Illinois and Kentucky Railroad Company is an independent corporation authorized by the laws of Illinois and the United States to construct the railroad mentioned in its charter. It has let contracts for the construction of that railroad, and when completed it will not be parallel to and in competition with the trunk line of the Illinois Central Railroad Company. The Southern Illinois and Kentucky Railroad Company is not the agent and instrumentality of the Illinois Central Railroad Company for the purposes charged in the bill, nor is the latter constructing

the railroad which the former is chartered to build. The Illinois Central Railroad Company desires the construction of the proposed railroad, and when it is completed expects to avail itself of such rights to the use and operation of the road as may be permitted by the laws of Illinois and the United States. It has no purpose, however, to change its main trunk or central line from its present location to the line to be constructed from Edgewood to Metropolis. Neither company has applied to the Illinois Commerce Commission for a certificate of public convenience and necessity authorizing the construction of the road. Such a certificate is not necessary to permit the building of a railroad to engage in interstate commerce, it being sufficient for that purpose to obtain the permission of the Interstate Commerce Commission, which has been done.

The Illinois Central Railroad Company operates 2075.23 miles of railroad in the State of Illinois, of which only 705.5 miles were built under its charter and the remaining 1369.73 miles were acquired from time to time by leases, contracts to operate, the organization of new corporations, the purchase of existing lines or of the capital stocks of corporations, and other lawful methods. In the case of the line extending westward from Chicago a separate corporation was organized, known as the Chicago, Madison and Northern Railroad Company, the incorporators of which were officers and directors of the Illinois Central Railroad Company. Similar instances were the South Chicago Railroad Company, the Johnston City Southern Railroad Company, the Fredonia and Reeds Railroad Company, the Benton Southern Railroad Company and the Kankakee Southwestern Railroad Company. After the lines of these companies, including the Chicago, Madison and Northern Railroad Company, had been built, they were first leased and subsequently purchased by the Illinois Central Railroad Company.

In addition to the non-charter line mileage of the Illinois Central Railroad Company in Illinois the company operates 2772.25 miles of railroad in South Dakota, Minnesota, Iowa, Nebraska, Wisconsin, Indiana, Missouri, Kentucky, Tennessee, Alabama, Mississippi and Louisiana. Speaking generally, the lines operated west of the Mississippi river are owned by the Dubuque and Sioux City Railroad Company and those south of the Ohio river by the Chicago, St. Louis and New Orleans Railroad Company. The railroads of both companies are leased to the Illinois Central Railroad Company. That company also owns the capital stock of the Mississippi Valley Company, which, in turn, owns the capital stock of the Yazoo and Mississippi Valley Railroad Company. The last mentioned company operates railroads in Tennessee, Mississippi and Louisiana. All together the Illinois Central Railroad Company operates 4847.48 miles of railroad in thirteen States, and of this mileage only 705.5 miles were built and are operated under the provisions of the original charter. By means of this system of railroads interstate commerce is carried on extensively among many States.

The Chicago, St. Louis and New Orleans Railroad Company has corporate power to construct the proposed line in Kentucky, and there are no impediments to the leasing of the line to the Illinois Central Railroad Company nor to the action of the latter in advancing funds for its construction. The assumption of liability by the Illinois Central Railroad Company upon certain first mortgage bonds issued by the Paducah and Illinois Railroad Company has no relevancy to this controversy. The Illinois Central Railroad Company has an existing line extending from Carbondale, Illinois, to Paducah, Kentucky, and the Metropolis bridge, which belongs to the Paducah and Illinois Railroad Company, would be used by the Illinois Central Railroad Company even if the line between Edgewood and Metropolis had never been projected. For many years the Illi-

nois Central Railroad Company used a ferry boat to trans-
port its trains across the Ohio river at Metropolis, Illinois.
The Paducah and Illinois Railroad Company built a bridge
across the river at that point. The capital stock of the Pa-
ducah and Illinois Railroad Company was owned by the
Chicago, Burlington and Quincy Railroad Company and
the Nashville, Chattanooga and St. Louis Railroad Com-
pany. The Illinois Central Railroad Company desired to
abandon this ferry boat and in its stead to use the bridge
of the Paducah and Illinois Railroad Company. To ac-
complish this result it was deemed desirable that the Illi-
nois Central Railroad Company become a stockholder in
the Paducah and Illinois Railroad Company and a joint
guarantor of its bonds. Under section 20a of the Inter-
state Commerce act, as amended by the Transportation act
of 1920, it was necessary that the Illinois Central Railroad
Company secure authority from the commission to become
such a guarantor. Upon application the authority was
granted and the order is in effect.

Shortly after the Southern Illinois and Kentucky Rail-
road Company was organized, that company, the Illinois
Central Railroad Company and the Chicago, St. Louis and
New Orleans Railroad Company joined in an application
to the Interstate Commerce Commission whereby permis-
sion and authority were sought from that commission by
the Southern Illinois and Kentucky Railroad Company to
build its line in Illinois, by the Chicago, St. Louis and New
Orleans Railroad Company to build its line in Kentucky,
and by the Illinois Central Railroad Company to acquire
control of the Southern Illinois and Kentucky Railroad
Company by the purchase of its entire capital stock, and
to acquire running rights over, or to lease or purchase,
and to operate, the proposed lines of that company and
the Chicago, St. Louis and New Orleans Railroad Com-
pany. When this application was filed with the Interstate
Commerce Commission notice was given to the Governor

and the Attorney General of Illinois in accordance with the provisions of the act. Thereupon the Attorney General and certain citizens of the city of Cairo and other communities on the Illinois Central railroad between Edgewood, Illinois, and Fulton, Kentucky, intervened in opposition to the application. The hearing at Cairo occupied six days in April, 1923. A very extensive record was made, briefs were filed on behalf of the railroad companies, the Attorney General and the protesting citizens and communities, and the Interstate Commerce Commission on August 4, 1923, made its report and order. The commission found that public convenience and necessity required (*a*) the construction of the proposed lines by the Southern Illinois and Kentucky and the Chicago, St. Louis and New Orleans Railroad companies, and (*b*) the acquisition and operation by the Illinois Central Railroad Company of the line of railroad to be constructed by the Southern Illinois and Kentucky Railroad Company. The commission further found that the acquisition by the Illinois Central Railroad Company of control of the Southern Illinois and Kentucky Railroad Company by purchasing its capital stock and of control of the railroad to be constructed by the Chicago, St. Louis and New Orleans Railroad Company, in accordance with the lease existing between the two companies, would be in the public interest. Subsequently the Attorney General and the protesting citizens and communities applied for a re-argument. The application was granted, the case was re-argued, and the Interstate Commerce Commission on February 5, 1924, issued its report on re-argument, confirming its previous report and order. This report and order of the commission have never been enjoined, set aside or attacked and are now in full force and effect.

After the decision of the Interstate Commerce Commission was rendered the Southern Illinois and Kentucky Railroad Company and the Chicago, St. Louis and New Orleans

Railroad Company acquired their respective rights of way. Construction work began on the line of the Southern Illinois and Kentucky Railroad Company, so that prior to December 12, 1924, it had expended more than $708,000 in the purchase of right of way and in the work of construction, and the Chicago, St. Louis and New Orleans Railroad Company had expended during the same period upwards of $214,000 for similar purposes. Moreover, the Southern Illinois and Kentucky Railroad Company had let contracts for the construction of the entire line from Edgewood to Metropolis before this suit was instituted. These things were done during a period of more than a year, and the appellants, although advised of the activities of the corporations, took no steps to prevent them. In view of these facts the appellants have been guilty of gross *laches* and are therefore estopped to maintain this suit.

The Southern Illinois and Kentucky Railroad Company filed a separate answer, in which it averred substantially the same matters of defense as were interposed by the Illinois Central Railroad Company. It asserted that it had a separate corporate existence, and that it, and not the Illinois Central Railroad Company, was building the railroad from Edgewood to Metropolis.

Appellants make the following contentions for the reversal of the decree: First, if the Southern Illinois and Kentucky Railroad Company is an independent corporation, acting upon its own responsibility and having full power to build the Edgewood cut-off as its own railroad, then the lines of the Southern Illinois and Kentucky and the Illinois Central Railroad companies will be parallel and competing and within the provisions of the constitution and statutes of the State which forbid consolidation of the stock, property or franchises of parallel or competing railroads; second, if, on the contrary, the Southern Illinois and Kentucky Railroad Company is the Illinois Central Railroad Company's subsidiary, controlled by the parent

for the realization of the latter's purposes, then (*a*) the Illinois Central Railroad Company will not be permitted by the organization of the Southern Illinois and Kentucky Railroad Company, a dummy corporation, to circumvent and escape its own stated charter limitations and legal obligations and to acquire corporate power from the Interstate Commerce Commission; (*b*) by its use of the Southern Illinois and Kentucky Railroad Company the Illinois Central Railroad Company attempts unlawfully to re-locate its main trunk line as established specifically by the Government Land Grant act and by the company's charter; it violates a specific provision of the constitution of Illinois in attempting to modify and release itself from its charter obligation to pay seven per cent of its gross income into the State treasury, and it attempts to alter and increase its charter power to include powers in excess of its legislative grant without the consent of the General Assembly of Illinois, whose creature it is and from which it must obtain the only powers that it may possess or exercise; and third, whether the Southern Illinois and Kentucky Railroad Company be an independent corporation or the Illinois Central Railroad Company's subsidiary, in either event the construction of the Edgewood cut-off is not permitted without a certificate of public convenience and necessity from the Illinois Commerce Commission.

Since the Southern Illinois and Kentucky railroad, when completed, will be a carrier engaged in interstate commerce, the appellees, on the other hand, contend: First, that none of the things which they propose to do in the construction and operation of that railroad are or will be within the prohibitions of the constitution or laws of Illinois; second, that whatever prohibitions are contained in the constitution and laws of Illinois against the doing of the acts sought to be done by the appellees are superseded by the provisions of the acts of Congress and the orders of the Interstate Commerce Commission entered pursuant

thereto; third, that under the Federal constitution, the acts of Congress and the orders of the Interstate Commerce Commission, the Illinois Central Railroad Company may lawfully purchase and own the capital stock of the Southern Illinois and Kentucky Railroad Company and may lease, or purchase and own, and operate, that company's line when constructed; fourth, that nothing in the laws of Illinois relating to the power of the Illinois Commerce Commission to grant certificates of convenience and necessity authorizing the construction of new lines prevents the construction of the line of the Southern Illinois and Kentucky Railroad Company for the purpose of engaging in interstate commerce; and fifth, that the instant suit is, in effect, one to vacate, annul and set aside an order of the Interstate Commerce Commission, and no court other than the special court specifically created by Congress for that purpose has jurisdiction to entertain such an action. Other contentions, such as *laches* on the part of the appellants in filing the suit, misconception of the appropriate form of action and misjoinder of parties complainant are also made by the appellees. The question of the jurisdiction of a State court to grant the relief sought by the appellants, however, lies at the threshold of our inquiry, and it will, for that reason, first be considered.

The second paragraph of article 6 of the constitution of the United States provides: "This constitution and the laws of the United States which shall be made in pursuance thereof  *  *  *  shall be the supreme law of the land; and the judges in every State shall be bound thereby; anything in the constitution or laws of any State to the contrary notwithstanding." By the third clause of section 8 of the first article of the same constitution Congress is declared to have power to regulate commerce among the several States.

The Interstate Commerce act enacted by the Congress applies to common carriers engaged in interstate commerce. Sub-section 18 of section 1 of this act (41 U. S. Stat. L.

chap. 91, p. 477,) provides: "No carrier by railroad subject to this act shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this act over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this act shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment." Sub-section 19 of the same section provides: "The application for and issuance of any such certificate shall be under such rules and regulations as to hearings and other matters as the commission may from time to time prescribe, and the provisions of this act shall apply to all such proceedings. Upon receipt of any application for such certificate the commission shall cause notice thereof to be given to and a copy filed with the Governor of each State in which such additional or extended line of railroad is proposed to be constructed or operated, or all or any portion of a line of railroad, or the operation thereof, is proposed to be abandoned, with the right to be heard as hereinafter provided." Sub-section 20 of section 1 of the same act provides: "The commission shall have power to issue such certificate as prayed for, * * * and may attach to the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require. From and after issuance of such certificate, and not before, the carrier by railroad may, without securing approval other than such certificate, comply with the terms

and conditions contained in or attached to the issuance of such certificate and proceed with the construction, operation, or abandonment covered thereby."

Sub-section 2 of section 5 of the Interstate Commerce act (41 U. S. Stat. L., chap. 91, p. 481,) provides: "Whenever the commission is of opinion, after hearing, upon application of any carrier or carriers engaged in the transportation of passengers or property subject to this act, that the acquisition, to the extent indicated by the commission, by one of such carriers of the control of any other such carrier or carriers either under a lease or by the purchase of stock or in any other manner not involving the consolidation of such carriers into a single system for ownership and operation, will be in the public interest, the commission shall have authority by order to approve and authorize such acquisition, under such rules and regulations and for such consideration and on such terms and conditions as shall be found by the commission to be just and reasonable in the premises."   Sub-section 8 of section 5 of the same act (41 U. S. Stat. L., chap. 91, p. 482,) provides: "The carriers affected by any order made under the foregoing provisions of this section and any corporation organized to effect a consolidation approved and authorized in such order shall be, and they are hereby, relieved from the operation of the 'anti-trust laws,' as designated in section 1 of the act entitled 'An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes,' approved October 15, 1914, and of all other restraints or prohibitions by law, State or Federal, in so far as may be necessary to enable them to do anything authorized or required by any order made under and pursuant to the foregoing provisions of this section."

Sub-section 2 of section 20a of the Interstate Commerce act (41 U. S. Stat. L., chap. 91, p. 494,) provides: "It shall be unlawful for any carrier to issue any share of capital stock or any bond,  *  *  *  even though permitted by

the authority creating the carrier corporation, unless and until, and then only to the extent that, upon application by the carrier, and after investigation by the commission of the purposes and uses of the proposed issue and the proceeds thereof * * * the commission by order authorizes such issue." The commission shall make such order only if it finds that such issue "(*a*) is for some lawful object within its corporate purposes, and compatible with the public interest, which is necessary or appropriate for or consistent with the proper performance by the carrier of service to the public as a common carrier, and will not impair its ability to perform that service, and (*b*) is reasonably necessary and appropriate for such purpose." Sub-section 7 of the same section provides: "The jurisdiction conferred upon the commission by this section shall be exclusive and plenary, and a carrier may issue securities and assume obligations or liabilities in accordance with the provisions of this section without securing approval other than as specified herein."

It was provided by section 207 of the Federal Judicial Code (36 U. S. Stat. L., p. 1148): "The commerce court shall have * * * jurisdiction * * * over all cases * * * brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission." Section 208 of the same code (36 U. S. Stat. ·L., p. 1149,) provided: "Suits to enjoin, set aside, annul, or suspend any order of the Interstate Commerce Commission shall be brought in the commerce court against the United States. * * * No order or injunction * * * restraining or suspending an order of the Interstate Commerce Commission shall be made by the commerce court otherwise than upon notice and after hearing, except that in cases where irreparable damage would otherwise ensue to the petitioner, said court, or a judge thereof may, on hearing after not less than three days' notice to the Interstate Commerce Commission and the Attorney General, al-

low a temporary stay or suspension in whole or in part of the operation of the order of the Interstate Commerce Commission."

By the act of Congress of October 22, 1913, (38 U. S. Stat. L., chap 32, p. 219,) the commerce court was abolished and its jurisdiction, so far as the present inquiry is concerned, was transferred to and vested in the several district courts of the United States, and the venue of any suit thereafter brought to enforce, suspend or set aside, in whole or in part, any order of the Interstate Commerce Commission was defined. The act further provides (38 U. S. Stat. L., chap. 32, p. 220) : "No interlocutory injunction suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any order made or entered by the Interstate Commerce Commission shall be issued or granted by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, unless the application for the same shall be presented to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a circuit judge, and unless a majority of said three judges shall concur in granting such application. When such application aforesaid is presented to a judge, he shall immediately call to his assistance to hear and determine the application two other judges. Said application shall not be heard or determined before at least five days' notice of the hearing has been given to the Interstate Commerce Commission, to the Attorney General of the United States, and to such other persons as may be defendants in the suit."

The complete and paramount power of Congress to regulate interstate commerce is well established. By virtue of the comprehensive terms of the constitutional grant of power the authority of Congress is adequate to meet the varying exigencies that arise and to protect the national interest by securing the freedom of interstate commercial

intercourse from local control. (*Houston, East and West Texas Railway Co.* v. *United States,* 234 U. S. 342; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Brown* v. *Maryland,* 12 id. 419; *Minnesota Rate Cases,* 230 U. S. 352.) In *Houston, East and West Texas Railway Co.* v. *United States, supra,* it is said: "Wherever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the State, that is entitled to prescribe the final and dominant rule, for otherwise Congress would be denied the exercise of its constitutional authority, and the State, and not the Nation, would be supreme within the national field." This power of regulation may be exercised, among other things, in matters of rates, issuance of securities, the control of one railroad by another and the construction of extensions and of new lines. (*Railroad Com. of Wisconsin* v. *Chicago, Burlington and Quincy Railroad Co.* 257 U. S. 563; *State of New York* v. *United States,* id. 591; *Dayton-Goose Creek Railway Co.* v. *United States,* 263 id. 456; *Railroad Com. of California* v. *Southern Pacific Co.* 264 id. 331; *Alabama and Vicksburg Railway Co.* v. *Jackson and Eastern Railway Co.* Supreme Court of the United States, No. 244, October term, 1925, decided May 24, 1926.) The exclusive jurisdiction of Congress and of its agency, the Interstate Commerce Commission, to regulate interstate commerce and the instrumentalities of such commerce, has been recognized by this court in *Marion and Eastern Railroad Co.* v. *Missouri Pacific Railroad Co.* 318 Ill. 436. In the exercise of this regulatory power Congress may grant to a railroad corporation created by a State, franchises additional to those enjoyed under its charter. *Central Pacific Railroad Co.* v. *California,* 162 U. S. 91; *Southern Pacific Railroad Co.* v. *United States,* 183 id. 519; *California* v. *Central Pacific Railroad Co.* 127 id. 1.

The record shows that the Southern Illinois and Kentucky Railroad Company will be an interstate carrier. Up-

on the application of the appellees, which was resisted by the appellants, the Interstate Commerce Commission found, among other things, that the public convenience and necessity required the construction of the cut-off between Edgewood, Illinois, and Fulton, Kentucky, and the acquisition and operation by the Illinois Central Railroad Company of the railroad to be built by the Southern Illinois and Kentucky Railroad Company; and the commission by its order granted the requisite permission ånd authority for these purposes. The appellees, by the provisions of the Interstate Commerce act, have the right to do these things without seeking any further authority. If, as the result of the instant suit, the construction of the cut-off should be enjoined, then a conflict of jurisdiction between the commission and the State court would necessarily arise, for what was affirmed by one would be denied by the other. In such a situation the power to determine whether State action will obstruct interstate commerce inheres in the United States as an incident of its power to regulate such commerce. *State of Colorado* v. *United States,* No. 195, decided by the Supreme Court of the United States on May 3, 1926; *Alabama and Vicksburg Railway Co.* v. *Jackson and Eastern Railway Co. supra.*

Appellants, however, insist that this suit is not one to enjoin, set aside, annul or suspend the orders of the Interstate Commerce Commission, but that it is merely a proceeding to enjoin the appellees from doing certain things which are not permitted by their charters and which are in violation of the constitution and laws of this State, and that despite the issuance of such an injunction the orders of the commission will be unaffected. Such a contention emphasizes the form and ignores the substance. The bill of complaint, it is true, makes no reference to the proceedings before the commission nor to the orders which that body entered in those proceedings. But the answers of the appellees disclose these proceedings and orders. In this re-

spect the instant suit resembles the case of *Lambert Run Coal Co. v. Baltimore and Ohio Railroad Co.* 258 U. S. 377. There the coal company filed a bill in a State court against the railroad company, an interstate carrier, for an injunction restraining the carrier from making distribution of coal cars in accordance with certain rules which it was charged were arbitrary and discriminatory and resulted in irreparable damage to the complainant. The rules of distribution of which complaint was made had been promulgated by the Interstate Commerce Commission, but that fact was not stated in the bill of complaint. The defendant removed the cause to the Federal district court, and there filed, in a single pleading, a motion to dismiss and an answer. It was urged in support of the motion that the case was not one within the jurisdiction of the State court; that the rules of distribution which were assailed had been promulgated by the Interstate Commerce Commission; that the bill was therefore one to restrain the enforcement of an order of the commission, and that the United States and the commission were indispensable parties. The complainant then moved for an interlocutory injunction. The defendant, insisting that the proceeding was one to stay an order of the commission, objected to a consideration of the motion in the absence of two other judges, as required by the act of October 22, 1913. (38 U. S. Stat. at L., chap. 32, p. 219.) The district court overruled the defendant's objection and motion and granted an interlocutory injunction in accordance with the prayer of the bill. From this order the defendant prosecuted an appeal to the Circuit Court of Appeals. That court found, upon the merits of the cause, that the bill should have been dismissed, but added that the injunction had been erroneously issued because the relief sought was to enjoin an order of the commission, and such an injunction could be granted only by a court of three judges. Accordingly the district court's order was reversed, with directions to dissolve the

injunction and to dismiss the bill. On a further appeal the United States Supreme Court modified the order of the Circuit Court of Appeals by directing that court to remand the cause to the district court for dismissal of the bill for want of jurisdiction and without prejudice. The Supreme Court said: "The rule of the railroad here complained of was that prescribed by the commission. To that rule the railroad was bound to conform unless relieved by the commission or enjoined from complying with it by decree of a court having jurisdiction. By this suit such a decree was, in effect, sought. The Appellate Court was therefore correct in holding that in such a suit an injunction of the district court could be granted only by three judges. But there are, in addition, two fundamental objections to the jurisdiction. First, the United States, an indispensable party to suits to restrain or set aside orders of the commission, was not joined, and could not be, for it has not consented to be sued in State courts. Secondly, such suits are required to be brought in a Federal district court. (Judicial Code, secs. 208, 211; act of October 22, 1913, chap. 32, 38 Stat. at L., 208, 219; *Illinois Central Railroad Co.* v. *Public Utilities Com.* 245 U. S. 493, 504; *North Dakota ex rel. Lemke* v. *Chicago and Northwestern Railway Co.* 257 id. 485; *Texas* v. *Interstate Commerce Com.* 258 id. 158.) The fact that this was a suit to set aside an order of the commission did not appear on the face of the bill, but it became apparent as soon as the motion to dismiss was filed. Jurisdiction cannot be effectively acquired by concealing for a time the facts which conclusively establish that it does not exist. As the State court was without jurisdiction over either the subject matter or the United States, the district court could not acquire jurisdiction over them by the removal. * * * The plaintiff may not, by alleging a * * * fictitious situation, confer upon a court jurisdiction which, as determined by the plaintiff's real cause of action, it has not. (*The Fair* v. *Kohler Die and Specialty Co.* 228 U. S.

22, 25.) And the vital interest of the United States was one which the plaintiff could neither ignore nor prejudice by indirection. * * * The district court should therefore have dismissed the bill as soon as it became apparent that the suit was one to set aside an order of the commission, (*Robinson* v. *Anderson,* 121 U. S. 522; *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.* 185 U. S. 282, 287; *Devine* v. *Los Angeles,* 202 U. S. 313, 338;) and the Circuit Court of Appeals, in remanding the cause to the district court, should have directed a dismissal for want of jurisdiction and without prejudice."

Appellants, however, assert that the orders of the Interstate Commerce Commission of which complaint was made in the case of *Lambert Run Coal Co.* v. *Baltimore and Ohio Railroad Co. supra,* related to car distribution and were necessarily mandatory, while the orders of the same commission here involved are merely permissive. So far as the question of jurisdiction is concerned, the distinction is without merit. In *Venner* v. *Michigan Central Railroad Co.* decided by the Supreme Court of the United States on April 26, 1926, the complainant was a minority stockholder of the railway company, which owns and operates an interstate railroad. The defendant made an agreement with two other railroad companies by which the three, collectively styled the "New York Central Lines," were to acquire a large number of locomotives for use on their respective railroads in both interstate and intrastate commerce. The money to pay for this equipment was to be obtained by issuing certificates maturing during a period of fifteen years, and the railroad companies covenanted, jointly and severally, to pay rentals for the use of the equipment sufficient to pay the certificates, with the interest thereon. On application by the three railway companies pursuant to section 20*a* of the Interstate Commerce act, the commission, after notice and investigation, by an order approved the agreement and authorized the acts con-

templated therein.   The complainant instituted suit in a State court, alleging in his bill that the issuance of the certificates and the provisions for their payment in the manner proposed would be a violation of the laws of the State wherein the defendant was incorporated, and of the other States into which its railroad extended, unless the approval of designated agencies of those States was obtained; that such approval had not been and would not be secured; that the defendant relied on the order of the Interstate Commerce Commission and was about to carry out the agreement as approved by that order; that the order, and the provisions of section 20*a* under which it was made, transcended the limits of Federal power and encroached on the powers of the States concerned.   The prayer was that the defendant be enjoined from carrying out the agreement notwithstanding its approval by the Interstate Commerce Commission.   On the defendant's petition, based on the diverse citizenship of the parties, the suit was removed to a Federal district court.   The defendant there challenged the district court's jurisdiction by a motion to dismiss. Want of jurisdiction was adjudged because the court was of the opinion that the suit was essentially one to annul or set aside an order of the Interstate Commerce Commission; that the United States was a necessary defendant and had not consented to be sued in a State court, and that the removal did not give the Federal court jurisdiction when the State court had none.   A decree of dismissal for want of jurisdiction followed.   In affirming the decree the Supreme Court said:   "We agree with the court below that the suit is essentially one to annul or set aside the order of the commission.   While the amended bill does not expressly pray that the order be annulled or set aside, it does assail the validity of the order and pray that the defendant company be enjoined from doing what the order specifically authorizes, which is equivalent to asking that the order be adjudged invalid and set aside.   (*Lambert Run Coal Co.* v. *Baltimore*

*and Ohio Railroad Co.* 258 U. S. 377, 380, 382.) Such a suit must be brought against the United States as the representative of the public and may be brought only in a Federal district court. (Judicial Code, secs. 208, 211; act of October 22, 1913, chap. 32, 38 Stat. L., 219; *Illinois Central Railroad Co.* v. *State Public Utilities Com.* 245 U. S. 493, 504, 505; *North Dakota* v. *Chicago and Northwestern Railway Co.* 257 id. 485, 487; *Texas* v. *Interstate Commerce Com.* 258 id. 158, 164; *Lambert Run Coal Co.* v. *Baltimore and Ohio Railroad Co. supra.*) That the order is not mandatory but permissive makes no difference in this regard, (*Chicago Junction case,* 264 U. S. 258, 263,) and as the State court was without jurisdiction the Federal court acquired none by the removal.—*Lambert Run Coal Co.* v. *Baltimore and Ohio Railroad Co. supra."*

The Interstate Commerce Commission authorized one of the appellees to build a railroad in this State and the other to acquire and operate it. Although the orders are permissive, the appellees have the right, under the provisions of the Interstate Commerce act above set forth, to do the things specified in the commission's orders. The instant suit is essentially one to annul or set aside those orders and the superior court was without jurisdiction to entertain it. Wanting jurisdiction, the cause could not be determined upon its merits.

The decree is reversed and the cause is remanded to the superior court of Cook county, with directions to dismiss the bill for want of jurisdiction and without prejudice.

*Reversed and remanded, with directions.*

Mr. Justice Duncan, dissenting.